**In the Matter of Dorothy GENERES, Debtor,**

**and**

**Tasker Generes, Debtor–Appellant.**

**In the Matter of Dorothy GENERES and Tasker Generes, Debtors–Appellees.**

**Appeal of Edward L. MORRELL and Patricia Morrell.**

Nos. 94–1647, 94–2213.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1995.

Decided Nov. 3, 1995.

David B. Kahn, Mark E. King (argued), Kahn & Associates, Northfield, IL, for Edward L. Morrell and Patricia Morrell.

Christopher R. Smith, Smith, Williams & Lodge, Chicago, IL, Lynn D. Dowd (argued), Levin, McParland, Phillips, Leydig & Haberkorn, Chicago, IL, for Tasker Generes in No. 94–1647.

Lynn D. Dowd (argued), Levin, McParland, Phillips, Leydig & Haberkorn, Chicago, IL, for Tasker Generes in No. 94–2213.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

The dispute in this case arises from an adversary proceeding in the bankruptcy court concerning a two-month extension of a

lease for a family home owned by the debtor, Tasker Generes, and rented to Edward and Patricia Morrell (the Morrells). The bankruptcy court determined that an oral agreement had been made between Generes and the Morrells to extend the lease. Generes appealed to the district court and lost; he now appeals to this court. The Morrells appeal the district court's decision not to impose sanctions in the form of attorneys' fees against Generes for filing a frivolous appeal in the district court. We affirm in part and reverse in part, and impose sanctions against Generes for pursuing a frivolous appeal in this court.

## I. Background

The Morrells occupied and owned a family home in Northfield, Illinois, that was partially destroyed by fire in December 1990. No one was injured and the house was temporarily uninhabitable, but the Morrells and their four children were forced to find temporary housing while the repair work was being completed. Authorized by their insurance company and aided by an attorney, the Morrells signed a six-month lease with Tasker Generes to rent a home owned by Generes in Northbrook, Illinois. Generes, a practicing attorney for almost twenty years, resided next door.

The lease was for a term of six months and provided for a monthly rent of $2200, to be paid by the 18th of the preceding month, and a security deposit of $4400. Under the six-month term of the agreement, the Morrells were to vacate the premises by June 17, 1991. However, the lease contained a holdover provision in the event that the Morrells

remained in possession of the house beyond the lease's original term.[1] The Morrells paid the security deposit and first month's rent and moved in on December 18, 1990.

There is no dispute that for the six month term of the original written lease, the Morrells paid each month's rent on time, usually by dropping off the rent-check at the Generes residence next door. However, the Morrells did not vacate the house by June 17, 1991, as originally agreed, but remained in possession for another two months pursuant to an oral agreement with Generes, the existence of which Generes denies. The Morrells paid rent of $2200 for the two additional months, although the July rent, due June 17, was not paid until July 6.

The Morrells vacated the premises on August 18, 1991 and contacted Generes about the return of their $4400 security deposit. Generes did not return the security deposit.

In late August 1991, Generes filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and the Morrells filed a timely claim for the return of the $4400 security deposit. Generes disputed the claim and filed an adversary proceeding against the Morrells in bankruptcy court, seeking eight months of unpaid rent and $8000 of alleged property damage.[2] In his complaint, Generes alleged that there had been no oral agreement to extend the lease, but instead a holdover tenancy had been created by the Morrells remaining on the property, which obligated the Morrells to pay twelve months of rent according to the holdover provision in the written lease.[3] Further, Generes asserted that on July 1, 1991, he delivered a letter

---

1. The holdover provision provided:
 If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse or otherwise, then the Lessor may at the Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of the lease for one year, and from year to year thereafter, at double the rent specified under Section 1 for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rent specified under Section 1, or (c) creation of a tenancy at sufferance, at a rental of ___ [blank] dollars per day for the time Lessee remains in possession. If

no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

2. Generes alleged that the Morrells's children had caused damage to the interior walls of the property. However, two weeks before trial, the bankruptcy court granted Generes's request to voluntarily dismiss the property damages claim.

3. Generes's claims against the Morrells under the lease totalled $27,027 plus attorneys fees and other costs.

to the Morrells in which he exercised his right under the terms of the written lease to create the holdover tenancy.

On June 30, 1993, the bankruptcy court held a hearing on the matter, receiving testimony from Generes, the Morrells, and the Morrells's contractor. According to the Morrells, in the spring of 1991, the contractor who was repairing their home informed them that the work would not be completed until mid-August. The Morrells testified that they then contacted Generes and requested and received a two-month extension of their lease at the same rate.

Generes testified that no such oral agreement was made. Further, he stated that the first action taken was on July 1, 1991, when he prepared a letter to the Morrells, in which he exercised his right to create a holdover tenancy for a term of one year due to the Morrells' continued occupancy of the property. However, Generes conceded that he did not mail the letter or hand-deliver it to anyone at the rental property, but instead dropped it inside the Morrells' unlocked front door.

Recognizing that the decision boiled down to a credibility determination, the bankruptcy court made the following findings:

I have listened to all of the witnesses and I have observed their demeanor in court. I will find that in fact, there was an agreement between Mr. Generes and the Morrells whereby the original period of the lease was extended for two months and two months only. That notice was not delivered to the Morrells on July 1.

The placing of the notice on the floor in the house is not delivery of the notice, and nor was the intent to treat them as holdover tenants in any way communicated to the Morrells during the periods at issue. That's up through and including June 1992.

The Morrell's testimony makes it clear. I believe Mr. Generes understood that the Morrells were only interested in renting until such time as their house was repaired. Given that their failure to respond to the alleged notice of July 1, 1991, would seem to raise a real issue to Mr. Generes

as to what was going on. He understood that they didn't inten[d] to live in this property forever, and they certainly understood that.

I just cannot understand why he assumed that their failure to respond to this alleged notice was an agreement on their part of his right to treat them as a holdover tenant. That's simply inconsistent with all of the circumstances of the case, and I just don't think that the delivery of the notice was reasonable under the circumstances. Nor, in fact, do I believe the notice was delivered at all or prepared at all.

Generes filed a motion for a new trial, which was denied, and he then appealed to the district court, claiming that the bankruptcy court had erred both in finding that an oral agreement had extended the lease and in refusing Generes an opportunity to present closing arguments. The Morrells cross-appealed, seeking attorneys' fees and costs.

The district court affirmed the bankruptcy court's findings. Also, the district court determined that Generes's action in the bankruptcy court warranted sanctions either under Fed.R.Civ.P. 11 (or its equivalent Bankruptcy Rule 9011) or under the court's inherent power to sanction bad-faith conduct, and it awarded attorneys' fees and costs for the Morrells, remanding the case to the bankruptcy court to determine the appropriate amount.[4] The Morrells then filed a motion for attorneys' fees as a sanction for Generes's appeal from the bankruptcy court, which the district court denied without stating any reasons. Generes appeals the district court's decision, and the Morrells cross-appeal, seeking the award of sanctions for Generes's conduct in the district court as well as his pursuit of a frivolous appeal in this court.

## II. Analysis

 Generes asks this court to reverse the bankruptcy court's factual finding that he and the Morrells orally agreed to extend the term of the written lease. Under Bankruptcy Rule 8013, this court reviews the bankruptcy court's findings of fact for clear error.

4. The remand has been stayed pending disposition of the appeal in this court.

*In re Lloyd,* 37 F.3d 271, 274 (7th Cir.1994); *In re Tolona Pizza Products Corp.,* 3 F.3d 1029, 1034 (7th Cir.1993) ("[T]he district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. The court of appeals also must restrict its review of factual findings to this narrow standard.") (quoting *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985)).

■ Generes argues, essentially, that the bankruptcy court should have believed his testimony and not that of the Morrells. However, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Generes seeks a pure review of credibility: he presents no extrinsic evidence that would undermine the trial court's decision to choose the Morrells's version of events over that presented by Generes. Although Generes seeks to persuade us that his version of events is more believable, our role is not to reweigh the evidence or make de novo factual determinations. *Dunning v. Simmons Airlines Inc.,* 62 F.3d 863, 868 (7th Cir.1995) ("We refuse to second-guess the court's credibility determinations because the judge has had the opportunity to observe the verbal and nonverbal behavior of the witnesses focussing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, rather than looking at the cold pages [of a transcript]."). Other than rearguing his own version of the facts, Generes has offered neither caselaw nor any facts or circumstances much less logical reasoning why we should disturb the credibility determinations of the bankruptcy court. Accordingly, we affirm the district court's decision to affirm the bankruptcy court's finding that the parties made an oral agreement to extend the lease for an additional two months.

Generes contends that even assuming that an oral agreement extended the lease, the Morrells were 18 days late with the rent payment for the first month of the two month extension. This tardiness, Generes argues, caused a breach of the lease and wrongful possession of the property. Generes's argument is misguided. The oral agreement extended the written lease for two months, and under the terms of the written lease late payment does not result in forfeiture of the property.

■ Turning from the merits of the case, Generes maintains that the bankruptcy court denied him the constitutional right to present closing arguments. Although closing arguments are required in a criminal case under the Sixth Amendment's right to effective assistance of counsel, *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), Generes has supplied no authority for the proposition that closing arguments are a constitutional right in civil cases and nor have we been able to find any. Indeed, Illinois courts have held that "oral argument in a civil proceeding tried before a court without a jury is a privilege, not a right, which is accorded to the parties by the court in its discretion." *Korbelik v. Staschke,* 232 Ill.App.3d 114, 173 Ill.Dec. 181, 184, 596 N.E.2d 805, 808 (1992). Further, Generes has provided no historical argument or persuasive justification why the Due Process Clause of the Fifth Amendment should be read to require closing arguments at his trial: a four-hour hearing in bankruptcy court.

Finally, Generes and the Morrells dispute the district court's disposition of sanctions. Generes claims the district court erred in awarding attorneys' fees and costs for the bankruptcy proceeding; the Morrells argue the district court did not go far enough and that they deserve attorneys' fees for Generes's conduct in the bankruptcy court, as well as in the district court and the court of appeals.

Although the district court found that Generes's conduct warranted sanction under Rule 11 of the Federal Rules of Civil Procedure (or its equivalent bankruptcy rule 9011), the court determined that the full range of Generes's conduct was not covered by the federal rules, and therefore the court invoked its inherent power to award attorney's fees

as a sanction for bad faith litigation. *See Chambers v. NASCO Inc.*, 501 U.S. 32, 33, 111 S.Ct. 2123, 2126, 115 L.Ed.2d 27 (1991) ("the court may safely rely on its inherent power [to impose attorney's fees as a sanction] if, in its informed discretion, neither the statutes nor the rules are up to the task."). In holding that the court's inherent power should be levied against Generes, the district judge stated:

> In the instant case, the record reflects that Generes' conduct rivals that of the defendant in *Chambers,* who not only filed false and frivolous pleadings, but committed perjury and harassed his opponents. Furthermore, Generes used these proceedings as a vehicle for making serious and scandalous allegations which are totally bereft of any basis in fact or law, including claims that the Morrells committed arson and insurance fraud, and objected to his reorganization plan in bad faith. Generes also improperly disclosed the contents of settlement negotiations and accused the trial judge of improper ex parte communications with opposing counsel without any substantiation whatsoever.

(Order at 22).

■■■ Generes argues that sanctions should not have been imposed for his conduct in the bankruptcy court. We review the imposition of such sanctions for an abuse of discretion. *Matter of Excello Press Inc.,* 967 F.2d 1109, 1112 (7th Cir.1992) (sanctions imposed under bankruptcy rule 9011 reviewed for an abuse of discretion); *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2135–36 (a federal court's inherent power to sanction bad faith conduct is reviewed for an abuse of discretion). As the district court described above, Generes's filings and actions in this matter were characterized by unsubstantiated accusation. Based on the facts of this case, as well as the caselaw applicable thereto, we hold that the district court acted within its discretion in imposing sanction for Generes's conduct in the bankruptcy court.

■ The Morrells argue that the district court should also have imposed sanctions for Generes's appeal to the district court, as well as for his actions in bankruptcy court. In evaluating Generes's conduct, the district court determined that Generes had violated Rule 11 of the Federal Rules of Civil Procedure because the appellate brief filed by Generes in the district court was devoid of reasonable inquiry into either the facts or law of the case, and the district judge stated that "Generes fills his 33 pages with equal parts irrelevance, innuendo, conjecture and other unsupported legal and factual assertions." Moreover, the district court continued, "the briefs which Generes submitted to this court are poorly organized, replete with typographical and grammatical errors, and sorely lacking in relevant legal authority." Although Generes acted pro se, the district court found that he was a licensed attorney who had practiced law for twenty years. However, despite finding that Generes had specifically violated Rule 11, the district court in the exercise of its discretion declined to impose sanctions.

Our analysis of the district court's denial of sanctions is complicated by the amendment to Rule 11, which took effect while the action was pending before the district court.

The old version of Rule 11 provides, in relevant part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose ... an appropriate sanction."

Fed.R.Civ.P. 11 (1993) (emphasis added).

Taking effect on December 1, 1993, the amended version of Rule 11 governs "all proceedings in civil cases thereafter com-

menced and, insofar as just and practicable, all proceedings in civil cases then pending." 146 F.R.D. 404 (Apr. 22, 1993) (Supreme Court order amending the Federal Rules of Civil Procedure). The amended version provides, in relevant part:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.... (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court *may* ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11 (1994) (emphasis added). "Thus, under the amended version, the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir. 1994). *See also Cunningham v. Waters Tan & Co.,* 65 F.3d 1351, 1360 (7th Cir.1995); *Land v. Chicago Truck Drivers Union,* 25 F.3d 509, 515 (7th Cir.1994).

We have held that applying the amended version of Rule 11 to pending cases is not "just and practicable" where the conduct, motions, and decision of the district court occurred before the December 1, 1993, effective date. *See Cunningham,* 65 F.3d at 1361 ("Plaintiffs' counsel's conduct should be judged under the standards applicable when the action took place."); *Land,* 25 F.3d at 516 ("Both at the time Land filed his complaint and when the Fund moved for sanctions, the old Rule 11 was in effect, and both parties were presumably operating under the standards and procedures propounded in that rule. Counsel's conduct should therefore be judged under those standards."). In this case, Generes's opening brief was filed November 15, 1993, before the effective date. Although the district court's decision and the Morrells's motion for sanctions were filed after December 1, 1993, the district court applied the old version of Rule 11 when concluding Generes had committed sanctionable conduct. We believe that it is just and practicable to apply the version of Rule 11 that the district court itself applied and was in effect at the time Generes appealed from bankruptcy court and filed his brief in the district court, that is, the old version of the Rule.

■ The district court's initial determination that Rule 11 had been violated is reviewed for an abuse of discretion. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir.1989) (en banc). Because of the frivolous nature of Generes's appeal from the bankruptcy court, as described above by the district court, we hold that there was no abuse of discretion in finding that Generes had failed to make a reasonable inquiry into the law and facts of the case, including Generes's unsubstantiated allegations against the Morrells. Therefore, under the old version of Rule 11, sanctions are mandatory once the district court has identified a violation. *Cunningham,* 65 F.3d at 1360. Because the district court did not impose sanctions for the conduct that it found violated Rule 11, we remand the case to the district court for the imposition of an appropriate sanction. *See Ross v. City of Waukegan,* 5 F.3d 1084, 1088 (7th Cir.1993) ("the imposition of sanctions, when Rule 11 had been violated, is mandatory.").[5]

5. Further, even if we were to apply the amended version of Rule 11, we believe that the district court abused its discretion in that it found Generes's behavior was egregious and sanctionable, and yet it denied sanctions without explanation. *See LaSalle Nat. Bank v. County of DuPage,* 10 F.3d 1333, 1338 (7th Cir.1993) ("We have held that a district court abuses its discretion when it denies sanctions without explanation."). Although a deferential standard of review is required for Rule 11 determinations, this review "is not toothless." *Land,* 25 F.3d at 515.

Finally, the Morrells ask us to sanction Generes for pursuing a frivolous appeal in this court. As well as appealing the imposition of sanctions, Generes requested us to overturn a well-supported credibility determination of the bankruptcy court. With regards to the district court's decision that Generes had engaged in frivolous and sanctionable conduct before it and the bankruptcy court, "courts of appeals have ample authority to protect the beneficiaries of Rule 11 sanctions by awarding damages and single or double costs under Rule 38—which they may do ... when the appellant had no reasonable prospect of meeting the difficult standard of abuse of discretion." *Kale v. Obuchowski,* 985 F.2d 360, 363 (7th Cir.1993) (quoting *Cooter & Gell v. Hartmarx Co.,* 496 U.S. 384, 408, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990)).

An appeal is frivolous when "the result is foreordained by the lack of substance to the appellant's arguments." *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir.1989) (en banc). Generes has offered no justification for his conduct in the district court, other than to reassert his own version of the facts, arguing that we should believe him and not the Morrells. We have previously held such appeals frivolous and sanctionable. *See Rennie v. Dalton,* 3 F.3d 1100, 1110 (7th Cir.1993) ("Accordingly, we believe Rennie's appeal was frivolous as all she did was restate and reargue facts and credibility issues previously ruled upon in the district court."). Although we reserve the discretion to withhold sanctions, *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 504 (7th Cir.1992), in Generes's case we conclude that the substance of the appeal is clearly frivolous and sanctions are appropriate. Pursuant to Circuit Rule 38, we must provide reasonable notice to counsel that we are contemplating sanctions and give an opportunity to respond. Counsel for Generes shall submit a response to the question of the amount of sanctions imposed to the clerk of this Court within fifteen days of the date of this opinion. Counsel for the Morrells shall also submit to the clerk of this Court within fifteen days an accounting of attorney's fees and costs incurred in this appeal.

The judgment of the district court is AFFIRMED in part and REVERSED in part.