## In re Boyce Allen BRASINGTON, Debtor/Appellant.

### Dyan Brasington, Plaintiff/Appellee,

v.

### Boyce Allen Brasington, Defendant/Appellant.

Civ.A. No. S–02–312.
Bankruptcy No. 00–6–4129–SD.
Adversary No. 01–5084–SD.

United States District Court,
D. Maryland.

March 7, 2002.

---

John M. Slowiak, Law Office of J. Marcus Slowiak PA, Annapolis, MD, for debtor.

Stanley Shapiro, Brookville, MD, pro se.

Dyan Brasington, Severna Park, MD, pro se.

## MEMORANDUM OPINION

SMALKIN, Chief Judge.

This is an appeal from an order of the United States Bankruptcy Court for the District of Maryland (Derby, J.), declaring certain debts to be non-dischargeable. The appellant and debtor, Boyce Allen Brasington, raises nine issues on appeal. Because the issues have been fully briefed, and because "the decisional process would not be significantly aided by oral argument," the Court finds oral argument unnecessary. BANKR. R. 8012 (2001).

## I. BACKGROUND

Boyce Allen Brasington (appellant/debtor/defendant) and Dyan Brasington (appellee/plaintiff) were married on April 15, 1989, and they had one child, David, born on December 6, 1990. The parties separated in September, 1994 and were granted a divorce on October 24, 1996, by judgment of divorce of the Circuit Court of Kanawah County, West Virginia. Ms. Brasington was awarded custody of their son at this time. Alimony was waived and the judgment set forth an equitable distribution of the parties' marital assets and liabilities.

The debt now at issue arose pursuant to Paragraphs N and O of the judgment of divorce and is rooted in two sources. First, at the time of divorce, the parties had a joint obligation of $6,523.95 to One Valley Bank, and the appellant was held responsible for half of that debt. Second, the appellant was ordered to pay Ms. Brasington $16,000 as a result of the equitable distribution in the divorce proceedings. This distribution was ordered because Ms. Brasington had paid more than the appellant on the mortgages and maintenance expenses on the couple's properties during their marriage.

The appellant filed for bankruptcy on November 13, 2000 and sought to have the debt now at issue discharged. The case was heard in the United States Bankruptcy Court for the District of Maryland. On November 28, 2000, the Hon. E. Stephen Derby issued an order and opinion declaring the marital debt to be non-dischargeable, pursuant to 11 U.S.C. § 523(a)(15) (2001). That section of the Bankruptcy Code declares that certain debts incurred in the course of a divorce are excepted from discharge unless the debtor can show that he cannot satisfy the debt from income not reasonably necessary for his support or the support of a dependent, *id.* § 523(a)(15)(A), or that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse ... of the debtor," *id.* § 523(a)(15)(B).

The appellant raises the following issues on appeal, which will be dealt with *seriatim*:

1. Did the trial judge incorrectly apply § 523(a)(15) by failing to actually consider whether the appellant met his burden under § 523(a)(15)(B)?

2. Were the following "findings of fact" of the trial court clearly erroneous:

   a. "[T]he defendant's conclusory statements that he could not afford to pay his debt ... were neither believable nor reliable."

   b. "[T]he defendant's ... explanation of income inconsistencies ... were neither believable nor reliable."

c. "[T]he defendant's . . . explanation of expense approximations were neither believable nor reliable."

d. "[T]he defendant's . . . explanation of unsupported bank entries were neither believable nor reliable."

e. The "plaintiff had the responsibility of primary care giver for their son."

f. "[T]he defendant had not maintained his support payments on a timely and current basis."

3. Is the trial court's "conclusion of law" that the appellant had the ability to pay the debt from income that is not reasonably necessary for the maintenance and support of the debtor within the meaning of § 523(a)(15)(A), incorrect?

4. Is the trial court's "conclusion of law" that the discharge of the debt would result in a benefit to the defendant that does not outweigh the detrimental consequences to plaintiff, within the meaning of § 523(a)(15)(B), incorrect?

For the reasons set forth below, a separate order will be issued AFFIRMING the order of the bankruptcy court as to the non-dischargeability of the debt under 11 U.S.C. § 523(a)(15).

## II. STANDARD OF APPELLATE REVIEW

A district court, sitting as an appellate court in bankruptcy, may not set aside a bankruptcy court's findings of fact unless they are clearly erroneous, BANKR. R. 8013; *First Nat'l Bank of Maryland v. Stanley*, 66 F.3d 664, 667 (4th Cir.1995), "and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." BANKR. R. 8013. It reviews decisions of law *de novo*. *First Nat'l Bank*, 66 F.3d at 667. A finding of

fact is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## III. DISCUSSION

### A. The Trial Court Understood and Adequately Applied § 523(a)(15)

Section 523(a)(15) states that debts to a spouse in connection with a divorce decree are not dischargeable unless the debtor proves, by a preponderance of the evidence, that he "does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor," 11 U.S.C. § 523(a)(15)(A), *or* that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor," *id.* § 523(a)(15)(B). As is clear, the two exceptions of § 523(a)(15) are listed in the disjunctive; thus, the debtor need not satisfy both (A) and (B) to secure a discharge. The burden of proving either exception rests at all times on the debtor. *In re Dexter*, 250 B.R. 222, 224–25 (Bankr.D.Md. 2000) (citing *In re Crosswhite*, 148 F.3d 879, 884–85 (7th Cir.1998); *In re Gamble*, 143 F.3d 223, 226 (5th Cir.1998); *In re Jodoin*, 209 B.R. 132, 140 (9th Cir. BAP 1997); *In re Moeder*, 220 B.R. 52, 55–56 (8th Cir. BAP 1998); *In re Molino*, 225 B.R. 904, 907 (6th Cir. BAP 1998)).

The appellant argues that the bankruptcy court improperly found that the appellant's debt to his former spouse was not dischargeable under this section of the Bankruptcy Code. More specifically, he

argues that, in reaching its decision, the bankruptcy court relied only on an analysis of § 523(a)(15)(A), and that, after finding that the appellant could not meet his burden under that subsection, the court failed to proceed to an analysis under § 523(a)(15)(B).

The appellant bases this argument on the following language of the trial court's oral opinion of November 15, 2001:

So, as far as I am concerned, under 523(a)(15)(A), the debtor does have the ability to repay this marital debt, and therefore, it should not be discharged.

If I had to deal with part B, which is the alternative, discharging such debt would result in a benefit to the defendant that [does not outweigh] ... the detrimental consequences to [the plaintiff].

I would say that the discharging of the debt would benefit the debtor when he doesn't have to, because he can afford to make the payment and that there will be some detrimental consequences to the former spouse, and therefore, the benefit of giving a discharge to someone who can pay the debt and having someone that has the obligation to support as the custodial parent of their child and who has to live on an income and support a house for that, that that detriment is sufficient to overcome the benefit to the debtor.

For those reasons, ... [p]aragraph O of the final decree is not discharged and should fall under 523(a)(15).

Tr. at 98 ln. 25 to 99 ln. 17 (Nov. 15, 2001) (altered according to Amendment to Findings and Conclusions for Order Declaring Debt to Be Nondischargeable (Jan. 2, 2002)).

When read as a whole, however, the trial transcript indicates that the bankruptcy court understood the disjunctive nature of § 523(a)(15) and applied the statute correctly. Prior to rendering its decision as to dischargeability, the court made clear its understanding of the two-part inquiry that § 523(a)(15) requires, explaining that the debtor may discharge the debt if *either* (A) *or* (B) is satisfied. The court explained:

This leaves us with 523(a)(15), and 523(a)(15) is loaded with so many negatives it is hard to read it. But basically what it says is that if there is an obligation that arises out of a divorce decree or agreement or a separation agreement between spouses, former spouses, spouses or former spouses that is not a kind of obligation that would be characterized as alimony, maintenance and support, but it does arise out of the separation agreement or divorce decree, then that debt, on the request of the non-debtor spouse, will not be discharged or dischargeable unless the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.

*Or*, unless discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse or a child of the debtor. I left out a few words in that statement, *but I have said the ones that I think are applicable here.*

Tr. at 93 ln. 25 to 94 ln. 18 (Nov. 15, 2001) (emphasis added). Certainly, the court understood the tests to be applied. That the court actually applied these tests becomes clear from the language of the court's final, written order, which makes an explicit finding that the appellant failed to meet his burden of proving that the benefit that he would receive from discharge of the debt outweighed the detriment imposed on his former spouse. The order states:

[T]he agreed debt owed by defendant to plaintiff ... constitutes a debt incurred by defendant in the course of a divorce or separation and in connection with a separation agreement and divorce decree within the meaning of [11 U.S.C. § 523(a)(15) ]. By a preponderance of the evidence plaintiff showed defendant has the ability to pay such debt from income that is not reasonably necessary for the maintenance and support of the debtor within the meaning of 11 U.S.C. § 523(a)(15)(A), and defendant did not show by a preponderance of the evidence that he does not have the ability to pay such debt from income or property not reasonably necessary for his maintenance and support. Defendant's conclusory statements that he could not afford to pay this debt and his explanations of income inconsistencies, expense approximations, and unsupported bank entries were neither believable nor reliable. *Because* the defendant could afford to pay this debt within the meaning of 11 U.S.C. § 523(a)(15)(A), *because* plaintiff had the responsibility of primary care giver for their son and was her sole support, and *because* defendant had not maintained his support payments on a timely and current basis, the discharge of such debt would result in a benefit to the defendant that [does not outweigh] the detrimental consequences to plaintiff. *See* 11 U.S.C. § 523(a)(15)(B). *Consequently*, this debt is excepted from defendant's discharge and is not dischargeable under 11 U.S.C. § 523(a)(15).

Order Declaring Debt to Be Non–Dischargeable at 2 (Nov. 29, 2001) (emphasis added) (as amended according to Amendment to Findings and Conclusions for Order Declaring Debt to Be Nondischargeable (Jan. 2, 2002)).

■ Considering all three of these excerpts, it is clear that the bankruptcy court actually decided that the appellant failed to meet his burden of proving that the benefit of discharge outweighed the detrimental consequences to the appellee. Moreover, under settled Fourth Circuit law, where an opinion, whether oral or written, is in conflict with an order or judgment, it is the order or judgment that governs. *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.,* 741 F.2d 41, 44 (4th Cir. 1984). The court's November 29 order clearly applies § 523(a)(15)(A) and (B). Therefore, the appellant's first ground for appeal cannot prevail.

B. *The Trial Court's Findings Are Not Clearly Erroneous*

(1) "Findings of Fact" as to Appellant's Credibility and Ability to Pay

As for the trial court's findings of fact, none is clearly erroneous. As a preliminary matter, the first four of the six challenged findings are not exactly findings of fact; rather, they are determinations of the appellant's credibility. Regardless, "credibility determinations are reviewed under the clearly-erroneous standard because the trier of fact has had the 'opportunity to observe the demeanor of the witnesses.'" *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 499–500, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)); *see also* BANKR. R. 8013. Each assessment by the trial court as to the appellant's credibility is supported by the evidence, and this Court is not at all convinced that the trial court's assessment is in error.

The appellant's first four contentions are that the trial court erred in finding that the appellant's statement that he could not pay his debt, his explanation of income

inconsistencies, his explanation of expense approximations, and his explanations of unsupported bank entries were neither believable nor reliable. Each of these findings flows from the judge's assessment of appellant's testimony and his prior conduct, which revealed an abundance of thinly supported and inaccurate estimations as to expenses, income, and liabilities, Tr. at 21–22 (Nov. 13, 2001) (estimates of income for bankruptcy purposes); *id.* at 33 (in custody case interrogatories, overestimation of income by roughly $43,000); *id.* at 35 (in custody case interrogatories, underestimation of income from a profit sharing pay-out by $3,000); inaccurate reporting of income for bankruptcy and tax purposes, *id.* at 15–16 (inaccurate income statement filed with the IRS); *id.* at 21–22 (failure to report $1,200 of income at creditors' meeting); *id.* at 31–32 (underestimated fee received for Marine Corp writing at creditors' meeting); *id.* at 45 (underestimated income for 1999 at creditors' meeting); failure to keep financial records; *id.* at 22, inability to stay current on federal and state income taxes, *id.* at 26, 71; and admissions of a lack of ability to perform basic accounting tasks and personal finance analysis, *id.* at 24, 34, 45. When viewed in light of the trial court's unique position to determine credibility, any reasonable judge could well have determined that appellant's testimony at trial was not to be trusted. Thus, this Court finds that no error was committed regarding Judge Derby's credibility assessment.

█ In arguing that these "findings of fact" are clearly erroneous, the appellant, without any citation to legal authority, also advances a legal argument: "Lack of believability or reliability is not a factual basis for a conclusion that the defendant can pay the debt." Brief of Appellant at 15. This argument seems to assert that, in deciding whether a debtor is unable to pay under § 523(a)(15)(A), the trial court cannot base its decision on whether the debtor is telling the truth about his income, liabilities, and expenses. This argument is clearly misguided.[1] Indeed, because the burden is on the debtor to prove that he cannot pay the debt under § 523(a)(15)(A), the trial court may base its decision *solely* on the credibility of the debtor's evidence of inability to pay—in this case, his documentary evidence, oral testimony, and his self-serving expense report. *See In re Dexter,* 250 B.R. at 224–25 (holding that the burden rests on the debtor to prove that an exception to non-dischargeability under § 523(a)(15)(A) or (B) exists); *see also In re Leonard,* 231 B.R. 884, 888–89 (E.D.Pa.1999) (determining whether the trial court erred in finding that the debtor had failed to satisfy § 523(a)(15)(A), and deferring "to the findings of the bankruptcy judge, who had a presumably more complete record and the opportunity to see and evaluate the credibility of the parties and the witnesses for himself"). The appellant has offered no explanation or legal authority to the contrary.

Finally, the appellant argues that the trial court's decision is in error because its opinion contains "no enunciated factual basis" to find that appellant was capable of paying the debt. Brief of Appellant at 15. Again, however, this argument assumes an improper allocation of the burden of proof in § 523(a)(15) cases. *See In re Dexter,* 250 B.R. at 224–25. Where a trial court finds that the debtor's evidence is entirely unreliable, it may accordingly find that the debtor has not met his burden of proving,

---

1. As far as the appellant argues that the trial court's factual determination that the appellant could pay the debt was clearly erroneous, that argument is not convincing, for reasons stated *infra,* Part III.C.

by a preponderance of the evidence, that he is unable to pay the debt—no positive enunciation of facts in favor of the debtor's former spouse is necessary.

(2) The Trial Court's "Finding" That the Appellee Was the "Primary Care Giver"

The appellant next argues that, in determining that he failed to meet his burden under the § 523(a)(15)(B) benefit-detriment test, the trial court erred in finding that the appellee "had the responsibility of primary care giver for their son." Basically, the appellant argues that it is unclear what "primary care giver" means, and that, regardless of its definition, and because the appellant exercises a great deal of responsibility for his son, the trial court's finding is clearly erroneous.

■ It seems that the appellant wants this Court (1) to define a term with no legal definition, and (2) to determine whether the trial court was clearly erroneous in finding that the appellee meets the definition of that term. Because "primary care giver" has no legal definition of relevance to this proceeding, it is impossible for this Court to rule on what the trial court intended for it to mean. It is clear from the record, however, that both parties contributed to the care of their son. The trial court's use of the term "primary care giver" in reaching its decision as to § 523(a)(15)(B) indicates that the court considered each party's responsibility to their son in assessing the relative benefits and detriments of discharge. Obviously, the parental responsibilities of each party is relevant to the benefit-detriment test. See, e.g., Migneault v. Migneault, 243 B.R. 585, 589 (D.N.H.1999); In re Whittaker, 225 B.R. 131, 143 (Bankr.E.D.La.1998). The court's finding that Ms. Brasington bore a greater responsibility than the appellant (thus, the appropriate allocation of "primary" and "secondary" status) is not clearly erroneous. There is evidence in the record—namely, the divorce order—which indicates that (1) the appellee had physical custody of the child for a majority of the calendar year, and (2) the appellee had veto power over long-term decisions such as education, religious training, discipline, and medical care. That the appellant undertook a significant responsibility in the care of his son is not enough to convince this Court that an error was made.

The appellant's argument on this point also strays into questioning the trial court's ultimate decision as to the outcome of the benefit-detriment test. First, the appellant advances an argument that ignores his burden: "More importantly in the instant case there is no finding of what detriment the Plaintiff's ability to give care suffers by not being paid $22,100.00 . . . by the defendant." This argument would oblige the court to make positive findings of detriment, as if there were a presumption in the defendant's favor, and as if it were not the debtor's burden to prove that benefit outweighs detriment under § 523(a)(15)(B). This is clearly not the case. See In re Dexter, 250 B.R. at 224–25.

Next, the appellant argues that "[i]n light of the defendant's joint custody and responsibility for his son as 'secondary' care giver, should not consideration be given to the Defendant's increased ability to give care if the debt is discharged?" This argument implies that this Court will re-evaluate factual issues by engaging in a de novo weighing of evidence under the benefit-detriment test. Clearly, this is not the role of an appellate court when dealing with factual findings of the bankruptcy court. See BANKR. R. 8013; First Nat'l Bank, 66 F.3d at 667. Moreover, the appellant has raised separately the issue of whether the trial court was correct in its benefit-detriment determination, and that

issue is dealt with separately, *infra* section III.D.

(3) The Court Did Not Err in Finding That "the Defendant Had Not Maintained His Support Payments on a Timely and Current Basis"

The appellant argues that the trial court's finding that "the defendant had not maintained his support payments on a timely and current basis" was clearly erroneous. In support of this argument, the appellant correctly explains that the judgment of divorce of October 24, 1996 did not set forth an amount of child support and that he made some support payments to the appellee before an amount was set. *See* Def.'s Ex. 2, at 10, 13. The amount of $501.33 per month was set by a supplemental order filed December 8, 1998. That order also assessed an arrearage in the amount of $10,033.89, and the appellant has been current on monthly support payments since that order took effect. *See* Def.'s Ex. 3, at 3–4. However, it appears that, in the two years after the divorce and before the supplemental order was filed, the appellant made entirely irregular and inadequate support payments (thus leading to the assessment of support arrears in the amount of over $10,000). *See id.* at 4. After paying somewhat regularly for the first 8 months following the divorce, the appellant made no support payments for over 15 months (October 18, 1996 to February 6, 1998), at which time he paid only $1,000. *Id.* After making this $1,000 payment, he again failed to make a single payment until May 6, 1998, a full 7 months later. *Id.*

This evidence supports the trial court's conclusion that the appellant had not maintained his support payments on a "timely and current" basis. Although the appellant has maintained current support since the Order of December 8, 1998, that evidence is not enough, in light of his prior irregularity in support payments, to convince this Court that a definite mistake has been made in the trial court's finding.

C. *The Court Did Not Err in Finding That the Appellant Failed to. Meet His Burden Under § 523(a)(15)(A)*

The appellant begins his argument on the penultimate issue on appeal with the following statement: "The Court's conclusion of law that the Defendant had the ability to pay the (marital) debt from income that is not reasonably necessary for the maintenance and support of the debtor or a dependent of the debtor, within the meaning of § 523(a)(15)(A) is incorrect." Brief of Appellant at 17. The appellant simply states, in conclusory language, that the trial court's finding that the debtor failed to meet his burden is a conclusion of law subject to *de novo* review. Then the appellant again argues in favor of *de novo* review, stating, without citing any authority, that "[t]he lower court, having not found facts specifically regarding the specifics of how the debtor had the ability to pay the debt, this court, in this appeal can look at the conclusion of law *de novo* based on the facts and make its own legal conclusion." *Id.* This latter argument for *de novo* review again ignores the fact that it is the debtor's affirmative burden to prove by a preponderance of the evidence that the debtor is unable to pay under § 523(a)(15)(A). The appellant implies that the trial court must point to evidence, presumably produced by the debtor's spouse, that indicates the debtor *can* pay the debt. As indicated *infra*, this is simply not the case. *See infra* Part III.A & B; *see also In re Dexter*, 250 B.R. at 224–25.

The appellant is also mistaken in arguing that the lower court's decision as to whether the debtor is unable to pay under 523(a)(15)(A) is a conclusion of law requiring *de novo* review. United States

District Courts apply the "clearly erroneous" standard when reviewing bankruptcy courts' decisions as to a debtor's inability to pay under § 523(a)(15)(A). *See, e.g., Migneault*, 243 B.R. at 589 (applying the clearly-erroneous standard, and characterizing the bankruptcy court's finding of whether a debtor was able to pay a debt under § 523(a)(15)(A) as a "factual determination"); *In re Cameron*, 243 B.R. 117, 124–25 (M.D.Ala.1999) (holding that the trial court was clearly erroneous in assessing the debtor's disposable income for the purpose of deciding whether he had proven an inability to pay under § 523(a)(15)(A)); *In re Leonard*, 231 B.R. 884, 888–89 (E.D.Pa.1999) (applying the clearly-erroneous standard, deferring to the trial court due to its unique ability to evaluate credibility, and finding no basis on which to overrule the trial court's finding "that the debtor does not appear able to pay the appellant" under § 523(a)(15)(A)).

It is certainly possible that a court would apply *de novo* review on a § 523(a)(15)(A) appeal, if a question of law arose as to, for example, the legal meaning of a term included in that statute. However, the case now before this Court does not challenge any application or interpretation of the statute. The appellant simply reargues, based on the same evidence the trial court found unreliable, that he was indeed unable to pay the debt. *See In re Generes*, 69 F.3d 821, 825 (7th Cir.1995) (refusing to disturb the credibility determination of a bankruptcy court where the debtor presented no legal or factual reasons for disturbing the assessment of credibility other than simply repeating his own version of the facts). Thus, no interpretation of law is necessary to the resolution of whether the appellant proved, by a preponderance of the evidence, that he was unable to pay the debt, and, therefore, weighing the evidence under *de novo* review is not necessary or authorized by law.

Moreover, *de novo* review in a case such as this would undermine the bankruptcy court's unique ability to evaluate the credibility of evidence. When a debtor attempts to protect a marital debt from exception under § 523(a)(15), the burden is on the debtor to prove, by a preponderance of the evidence, that he does not have the ability to pay. In re *Dexter*, 250 B.R. at 224–25. When a debtor presents documentary and testimonial evidence, and the trial court finds that the evidence is entirely unreliable (as was the case here), that court can properly find that the debtor has failed to meet his burden. Thus, the decision that the debtor failed to carry his burden under § 523(a)(15)(A) can rest solely on the resolution of a factual issue (*i.e.*, the reliability of the evidence, or, more simply, whether the debtor is telling the truth about his financial situation). On appeal, such a decision must be reviewed for clear error, as it is a review of a factual determination of the debtor's credibility. *Harte–Hanks Communications*, 491 U.S. at 688, 109 S.Ct. 2678. Deference to the bankruptcy court concerning matters of credibility is a settled principle of law. *See, e.g.,* BANKR. R. 8013 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *Tavenner v. Smoot*, 257 F.3d 401, 405–06 (4th Cir.2001) (quoting BANKR. R. 8013); In re *Generes*, 69 F.3d at 825 (" '[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.' " (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518

(1985))). Reviewing *de novo* the bankruptcy court's decision as to § 523(a)(15)(A), which rests almost entirely on the lack of credibility of the evidence at trial, would ignore the trial court's established and unique franchise to evaluate credibility, and would engage in an admittedly less-informed analysis of the reliability of the evidence of record. Thus, it is clear that the "clearly-erroneous" standard is proper in reviewing the bankruptcy court's decision as to § 523(a)(15)(A). *Cf. Anderson*, 470 U.S. at 575, 105 S.Ct. 1504.

■ This Court finds no basis for error in the trial court's determination that the appellant failed to prove that he is unable to pay his marital debt. The debtor's evidence consists of self-serving financial statements and his own testimony, which the trial court found unreliable and unbelievable. As indicated *supra* Part III.B.1, this Court finds no error in the trial court's credibility determinations, which decidedly indicate that the appellant's inability to assess his finances renders his evidence unreliable. Moreover, the trial court found that the debtor was by no means medically incapable of earning a higher level of income, and that his choice not to do so was his own. *See In re Henson*, 197 B.R. 299, 304 (Bankr. E.D.Ark.1996) (finding that the debtor had the ability to pay under § 523(a)(15)(A) where he was "a well educated, employable, healthy" person, who "[d]espite his education, skills, and previous employment, . . . has chosen to limit his income and employment"). With the credibility of the bulk of the debtor's evidence in question, and the strength of the evidence offered by Ms. Brasington in favor of the debtor's ability to pay, this Court finds no basis to reverse the trial court's determination that the debtor failed to meet his burden under § 523(a)(15)(A).

Finally, although a "clearly erroneous" standard is proper in this case, for the sake of a full exploration of the debtor's issues on appeal, the Court finds that *de novo* review would yield the same result. After an independent review of the record, this Court remains convinced that the trial court's decision as to § 523(a)(15)(A) was correct. Reviewing the entire trial transcript and the documents in evidence and weighing that evidence anew, this Court finds that the appellant's evidence of his inability to pay the marital debt is unreliable. This finding is largely determined by the appellant's own testimony and exhibits, which reveal a serious inability to produce accurate financial records, to stay current on financial and familial obligations, and to perform basic accounting tasks. Thus, even under *de novo* review, the appellant has failed to prove an inability to pay his debt under § 523(a)(15)(A).

D. *The Court Did Not Err in Finding That the Appellant Failed to Meet His Burden Under § 523(a)(15)(B)*

■ Appellant's final ground for appeal is that "the Court's conclusion of law that 'the discharge of such debt would result in a benefit to the defendant that does not outweigh the detrimental consequences to the plaintiff' is incorrect as a matter of law, under any of the (B) tests and fact situations in the case law and under the facts of this case." Again, this statement misstates the standard of review. The weighing of benefits and detriments involves no question of law requiring *de novo* review; it involves a factual determination that will be disturbed only if clearly erroneous. *See In re Gamble*, 143 F.3d 223, 226 (5th Cir.1998); *Migneault*, 243 B.R. at 589 (finding that the bankruptcy court's balancing test under § 523(a)(15)(B) is subject to the "clearly erroneous" standard, and explicitly rejecting *de novo* review of the matter).

Following his blanket statement of trial court error, the appellant seems to argue that the court did not engage in an adequately thorough balancing of factors, and that more weight should have been given to the fact that, if the debtor had to pay this debt, he would have less money with which to facilitate visits with his son. Thus, essentially, the appellant is simply rearguing the factual merits of his case, on which the trial court properly ruled.

Certainly, numerous factors may be considered in determining whether the benefit of discharge outweighs the detriment to the non-debtor spouse. As the appellant correctly indicates, trial courts consider the totality of the circumstances in assessing the benefit and detriment under this section of the bankruptcy code. *See In re Crosswhite*, 148 F.3d 879, 888 (7th Cir.1998); *Gamble*, 143 F.3d at 226; *In re Whittaker*, 225 B.R. 131, 143 (Bankr. E.D.La.1998). It is clear from the trial court's oral opinion and written order that the trial court engaged in a proper analysis of the relevant factors. In its written order, the court explained:

> Because the defendant could afford to pay this debt within the meaning of 11 U.S.C. § 523(a)(15)(A), because plaintiff had the responsibility of primary care giver for their son and was her sole support, and because the defendant had not maintained his support payments on a timely and current basis, the discharge of such debt would result in a benefit to the defendant that [does not outweigh] the detrimental consequences to plaintiff. *See* 11 U.S.C. § 523(a)(15)(B). Consequently, this debt is excepted from defendant's discharge and is not dischargeable under 11 U.S.C. § 523(a)(15).

Order Declaring Debt to Be Non–Dischargeable at 2 (Nov. 29, 2001) (as amended according to Amendment to Findings and Conclusions for Order Declaring Debt to Be Nondischargeable (Jan. 2, 2002)). This language clearly reflects consideration of several factors, including (1) the current income, expenses, and assets of the debtor and his former spouse; (2) the debtor's current liabilities; (3) the well-being of the parties' child; and (4) the financial detriment incurred by the appellee in providing care for the parties' child after their divorce, largely without support from the debtor. Moreover, as discussed *supra*, the trial court found that the debtor was entirely able to pay and that any assertions of his dire financial situation were not to be believed, thus weighing against any benefit realized by discharging the debt, and similarly weighing against any argument that paying the debt would result in an inability of the debtor to conduct visitation with his son.

Therefore, there is nothing in the record to suggest clear error in the trial court's finding that the appellant did not meet his burden of proving, by a preponderance of the evidence, that the benefit of discharging his marital debt outweighed the detriment imposed on his former spouse.

## IV. *CONCLUSION*

Having found no error in the decision of the bankruptcy court as to § 523(a)(15) or the methods used to reach those decisions, for the reasons set forth herein, a separate Order shall be issued AFFIRMING the order of the bankruptcy court.

## *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 7th day of March, 2002, hereby ORDERED:

1. That the Order of the Bankruptcy Court from which this appeal is taken BE, and it hereby IS, AFFIRMED, with costs of appeal to be assessed against the appellant; and

2. That the Clerk of the Court send copies of this Order and the said Memorandum Opinion to counsel for the parties and to Bankruptcy Judge Derby.