DONALD KORBELIK, Plaintiff-Appellant, v. KAREN STASCHKE *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—1506

Opinion filed July 10, 1992.

Albert Brooks Friedman, Ltd., of Chicago, for appellant.

Bradley J. Harris, of North Riverside, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Following a trial without a jury, the court entered judgment for defendants Karen and Arlene Staschke, and against plaintiff Donald Korbelik, in this malicious prosecution suit. Plaintiff now appeals, contending that the trial court erred in finding that defendants did not act with malice; that the trial court erred in not allowing plaintiff's counsel to make a closing argument; that the court erred in admitting certain hearsay evidence; and that the court erred in not permitting greater latitude on cross-examination of defendants. We affirm.

The 41-year-old plaintiff and defendants (21-year-old Karen and her mother, Arlene) have lived next door to each other in Chicago for over 30 years. There have been ongoing difficulties between the families.

The record includes a police arrest report and complaint signed by Karen, accusing plaintiff of being "the person who put a ladder on the side of the victim's house and looked into the bathroom window while the victim was taking a shower" on June 6, 1987, at 11:30 p.m. Plaintiff was charged with disorderly conduct. Ill. Rev. Stat. 1987, ch. 38, par. 26—1(1)(5).

On July 23, 1987, plaintiff was arraigned and entered a plea of not guilty. Following a bench trial, the trial judge found plaintiff not guilty of disorderly conduct.

On August 2, 1987, plaintiff filed the instant suit against defendants, alleging malicious prosecution. On March 2, 1990, a bench trial was held.

At trial, Karen Staschke testified that she had known plaintiff all her life. On the night in question she heard someone outside the bathroom window, and she called out to her mother. Karen did not actually see defendant. Karen testified that her family had previously complained to the police about plaintiff, and plaintiff had complained to the police about defendants. In fact, the day after plaintiff was arrested he returned home and telephoned the police to make a complaint about defendants.

Arlene Staschke testified that the last time she spoke with plaintiff was approximately 15 years ago. Her family had called the police about plaintiff approximately five times over the years. On June 6, 1987, her daughter Karen called out that someone was outside the bathroom window. Arlene went outside and saw plaintiff, wearing a robe and slippers, standing "on a ladder by my bathroom window looking in at my daughter." Arlene testified further that about five

years earlier she read in the newspaper that plaintiff, who was then a Chicago police officer, had been charged with having sex with a prostitute while he was on duty.

Ted Srednick, a long-time neighbor of the parties, testified that he had not been aware of any dispute between the parties.

Alan Korbelik testified that he was plaintiff's brother. His family had "always" experienced problems with defendants' family. The Staschke family had called the police 20 to 30 times about the Korbeliks in the last five years.

Plaintiff Donald Korbelik testified that he had previously been a Chicago police officer and now taught history at a high school. The newspaper article referred to by Arlene concerned a bribery charge for which plaintiff was found not guilty. He was terminated from the Chicago police department for a rules violation. Plaintiff had been arrested three times, once for a felony offense. His termination from the police department was due to the incident resulting in the felony arrest.

Plaintiff testified further that he did not look through defendants' bathroom window on June 6, 1987. Relations between the Korbeliks and defendants had been "going bad for many, many years." The police had been called about 10 times by the Staschkes.

At the conclusion of the trial, the circuit court entered a judgment in favor of defendants. On April 24, 1990, the court denied plaintiff's motion for a new trial. On May 22, 1990, plaintiff filed this appeal.

OPINION

█ Plaintiff contends that the trial court erred in finding for defendants on the issue of malice and probable cause. The essential elements of a malicious prosecution claim require that plaintiff prove (1) that judicial proceedings were brought against the plaintiff; (2) that there was a lack of probable cause for those proceedings; (3) that the defendant demonstrated malice in instituting the proceedings; (4) that the cause of action was terminated in the plaintiff's favor; and (5) that the plaintiff was injured. *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 45, 411 N.E.2d 229; *Ghosh v. Roy* (1991), 208 Ill. App. 3d 30, 566 N.E.2d 873; *Burghardt v. Remiyac* (1991), 207 Ill. App. 3d 402, 565 N.E.2d 1049.

█ Probable cause in a malicious prosecution case is "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person is guilty." (*Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295-96, 211 N.E.2d 286.)

Whether a defendant has probable cause to bring criminal charges against a plaintiff is a question of fact. *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill. 2d at 296; *Salmen v. Kamberos* (1990), 206 Ill. App. 3d 686, 565 N.E.2d 6.

▉ Plaintiff argues that the proof of defendants' malice lies in the fact that Karen testified she never saw plaintiff on defendants' property. While lack of probable cause might tend to establish malice (see *Salmen v. Kamberos*, 206 Ill. App. 3d 686, 565 N.E.2d 6), here we find that there was sufficient evidence for the trier of fact to conclude that Karen acted with probable cause when she signed the criminal complaint against plaintiff. Arlene Staschke testified that she saw plaintiff on her property, standing on a ladder outside defendants' bathroom window, looking in at her daughter Karen. Arlene in turn told her daughter whom she had seen at the window. This was sufficient evidence for the trial court of fact to conclude that defendants did not act with malice in filing the disorderly conduct complaint against plaintiff.

Plaintiff also argues that the trial court erred in not permitting plaintiff's attorney to present a closing argument, thus indicating that the trial judge was prejudiced against plaintiff. Plaintiff points to the following colloquy:

"THE COURT: I think we can save some time, gentlemen. I don't think closing argument is needed. You can take the table.

[PLAINTIFF'S COUNSEL]: Your Honor, could I—could I speak to the Court to summarize?

THE COURT: I tell you, I got about 10 pages here, and I have been writing down, and I think I am pretty well aware of the testimony that has been given in this case.

[PLAINTIFF'S COUNSEL]: Okay.

THE COURT: I think in order to move it along, I am ready to rule."

▉ The courts have offered diverse rulings for whether or not a closing argument is required in criminal or civil, jury or nonjury, cases. (See generally Annot. *Prejudicial effect of trial court's denial, or equivalent, of counsel's right to argue case*, 38 A.L.R.2d 1396, (1954).) In a criminal trial, whether bench or jury, there is a sixth amendment right to present a closing argument. *Herring v. New York* (1975), 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550; *People v. Withers* (1981), 87 Ill. 2d 224, 228, 429 N.E.2d 853; *People v. Daniels* (1977), 51 Ill. App. 3d 545, 366 N.E.2d 1085.

Illinois follows those jurisdictions which hold that "[o]ral argument in a civil proceeding tried before the court without a jury, is a

privilege, not a right, which is accorded to the parties by the court in its discretion." *Oil Workers International Union v. Superior Court* (1951), 103 Cal. App. 2d 512, 581, 230 P.2d 71, 112. See, *e.g., Skruzewski v. Rybarczyk* (1918), 210 Ill. App. 180 (abstract) (in bench trial, court has discretion to refuse to hear argument); *Gilis v. Krulewich* (1915), 195 Ill. App. 384 (abstract) (same); *Steinke v. Eisner* (1915), 191 Ill. App. 172 (abstract) (same). See generally, Annot., 38 A.L.R.2d 1396, §5 (1954). *Cf. Vieceli v. Cummings* (1944), 322 Ill. App. 559, 561 (court holds that in civil case tried before a *jury*, argument of counsel is a "matter of right").

■ The present civil case was tried without a jury. It involved a very short trial with an uncomplicated factual scenario. Moreover, the judge took extensive notes. We find the court did not abuse its discretion in refusing to permit plaintiff's attorney to make a closing argument.

In an effort to demonstrate the trial judge's bias against him, plaintiff also points to the following colloquy:

"THE COURT: How many witnesses do you have left?

[PLAINTIFF'S COUNSEL]: Two subpoenaed and a third, the Chicago Police Department's records, and they're not here yet, Judge. I don't know what I am going to do about it.

THE COURT: I'll tell you what you're going to do about it. There's a procedure that you have to follow in the Corporation Counsel's office. If you've followed it, they would've been here. If they haven't been followed, they will not be here.

[PLAINTIFF'S COUNSEL]: Judge, we were [assigned] out in one day. We served the records subpoena on them yesterday.

THE COURT: You're wasting too much time on this case. It's not a jury courtroom. You understand that."

While it is prejudicial for a trial judge to make comments which indicate he harbors feelings of hostility toward a party or his attorney (*People v. Zaccagnini* (1963), 29 Ill. 2d 408, 194 N.E.2d 286), there is nothing in this record indicating any personal animosity between the judge and counsel. In regard to the above colloquy, we note that once a case has been reached for trial, sufficient cause is required to obtain a continuance. (134 Ill. 2d R. 231(f).) If the continuance is for obtaining material evidence, it is necessary to provide the court with an affidavit showing due diligence has been used. (134 Ill. 2d R. 231(a).) Similarly, a continuance required to permit counsel to further prepare is within the trial court's discretion. *People v. Surgeon* (1958), 15 Ill. 2d 236, 154 N.E.2d 253.

■ Here, there is nothing to establish sufficient cause. For example, there is no affidavit or other statement in the record which might inform this court as to the particular Chicago police department records which plaintiff's counsel sought and how those records might have affected the verdict. Moreover, as defendants point out, the case was filed on August 20, 1987, and the trial date was March 2, 1990. Plaintiff had sufficient time to obtain any necessary records. The trial court did not abuse its discretion in not permitting a continuance, and thus its decision does not demonstrate any bias on the court's part.

■ Plaintiff also contends that it was error to admit hearsay evidence of a newspaper article. Apparently plaintiff was charged with accepting bribery by engaging in sexual conduct with a prostitute while on duty. He was charged with a felony and was dismissed from the police force. While it is not in the record, apparently the article made some reference to those charges. The trial court ruled that it was "hearing it as to reputation of damages and letting it come in as to reputation of damages." At trial, plaintiff's counsel apparently agreed that the article was relevant to the issue of damages:

"[PLAINTIFF'S COUNSEL]: I think the article may go to damages. I don't know how it goes to the issue of probable cause."

We need not consider whether it would have been improper to admit the hearsay evidence for purposes of showing defendants had probable cause to believe plaintiff could be a "Peeping Tom." The article was never used by the court for that purpose, or indeed even for the limited purpose for which it was admitted, i.e., to establish whether or not plaintiff's reputation in the community had suffered. No error occurred.

■ Plaintiff finally contends that the trial court erred in not permitting greater latitude in the cross-examination of defendants. Plaintiff points to the first area of questioning he raised with Karen.

"Q. Could you tell me why you denied he was a citizen in the State of Illinois [in] the answer you filed in this lawsuit?"

The trial court instructed counsel to move on to the issues of the case and not focus on immaterial matters: "[T]his court is taking it for granted that when he answered the complaint it was either a typo [or] he denied everything. It's not material, and it doesn't affect her credibility."

The scope and extent of cross-examination rests largely in the discretion of the trial court, and a reviewing court will not interfere with the trial court's ruling absent an abuse of discretion. (*Sorenson v. Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) Here, the trial court

did not abuse its discretion in deflecting the testimony away from the question of whether defendants erroneously stated in their answer that plaintiff, who had been defendants' next-door neighbor in Illinois for well over three decades, was not a citizen in the State of Illinois.

Accordingly, for these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LORENZ and MURRAY, JJ., concur.